# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

DELFINA ARCHULETA, individually and as
Personal Representative of the Estate of her
deceased husband Bernabe Archuleta, and the RIO
GRANDE CAFÉ, INC., a New Mexico corporation,

       Plaintiffs,

   vs.                          No. CIV 01-1040 LH/DJS

BENEFICIAL STANDARD LIFE INSURANCE
COMPANY, FRANKLIN LIFE INSURANCE
COMPANY, USG ANNUITY & LIFE COMPANY,
AMERICAN LIFE AND CASUALTY
INSURANCE COMPANY aka CONSECO
ANNUITY ASSURANCE COMPANY, JOE A.
CASADOS, RONALD J. CASADOS, ELSIE A.
CASADOS, and CAMILLE KOEHLER,

       Defendants.

## <u>MEMORANDUM OPINION AND ORDER</u>

**THIS MATTER** comes before the Court on Plaintiffs' Motion to Remand to State Court

(Docket No. 6), filed October 10, 2001.  The Court, having considered the Motion, the memoranda

of the parties, and the applicable law, and otherwise being fully advised, finds that Plaintiffs' Motion

is well taken and will be **granted**.

Plaintiffs commenced this action on March 3, 2000, in state district court.  In their First

Amended Complaint, they bring claims for unconscionable trade practices, negligence, negligent

misrepresentation, fraud, intentional infliction of emotional distress, prima face tort, and punitive

damages against Defendant USG Annuity & Life Company (USG).  These claims stem from the sale

of an annuity contract on September 3, 1997, by USG through its agent Ronald J. Casados, to the Rio Grande Café, Inc., a corporation solely owned by Plaintiffs Delfina Archuleta and her now deceased husband Bernabe Archuleta, who was the named annuitant. Plaintiffs charge, *inter alia*, that USG's failure to follow its own procedures to ensure that a beneficiary was properly designated caused great uncertainty as to what person or entity should receive the proceeds of the annuity. Plaintiffs did not bring any claims or assert any rights arising under the Employee Retirement Income Security Act of 1974 (ERISA or the Act), 29 U.S.C. § 1001, *et seq.*

On August 10, 2001, Plaintiffs' damages expert witness, Virginia Stanley, testified at a continuation of her deposition. On the basis of certain statements made by Ms. Stanley, on August 21, 2001, USG moved the state district court for permission to amend its answer to the First Amended Complaint in order to assert ERISA defenses. On August 23, 2001, the state court denied USG's motion transfer venue outside of Rio Arriba County and on September 6, 2001, it granted USG's motion to sever and set the case against USG for trial on its December 10, 2001, docket. USG removed the severed action to federal court on September 7, 2001, on grounds of complete preemption by ERISA, based on Ms. Stanley's revelation for the first time on August 10th "that a non-qualified deferred compensation plan, which was established by Rio Grande Café, Inc. and funded with USG's annuity[,] was 'subject to ERISA.'" (Def. USG's Notice Removal ¶ 5.) USG supported this assertion with the following excerpts of Ms. Stanley's testimony:

> Q: With respect to the latter, that being the beneficiary, is Mrs. Archuleta the beneficiary of the nonqual, or is she the beneficiary of the USG annuity policy?
> A: It would be my opinion that – I'm going back to a prior conversation here – because I believe that Bernabe was vested, and I believe he was vested because he had every right to take those dollars out at any point in time since the date it was purchased when he vested, that plan became subject to ERISA. And unless you have

a spouse giving up their rights in that retirement plan, she has rights to the retirement plan.

So it's a long way of saying she will be the beneficiary of the nonqual. I don't know – and I understand that there was not a beneficiary listed on the USG.

. . . .

Q: Hypothetically, without conceding that there's anything ambiguous in our policy, because I really don't think there is, but hypothetically, assuming the policy was crystal clear in your own mind, that the result would be as follows, if no beneficiary is designated, the money belongs to the owner. The owner is Rio Grande Café. That's a hypothetical. I want you to assume that. Okay? Do you understand my hypothetical?

A: Uh-huh. Uh-huh.

Q: Could you say yes?

A. Yes, I'm sorry.

Q: Thank you. In light of the nonqual, where does the money end up?

A: In the corporation.

Q: It doesn't end up with –

A: I'm sorry. What do you mean by "in light of"? Could you clarify your question for me?

Q: Where do the proceeds of the USG annuity end up? And if you need me to clarify the words "end up" –

A: In light of. You mean assuming that the nonqual exists?

Q: Correct.

A: And your policy is crystal clear, where does it end up? I believe it ends up with Delfina, because I believe it's in an ERISA plan.

(*Id.*, Ex. B at 323, 326-27.)

Plaintiffs served USG with their Motion to Remand to State Court on September 21, 2001. On October 8, 2001, USG served Plaintiffs with both its Response in Opposition to Plaintiffs' Motion to Remand and a Motion for Leave to Undertake Discovery Relating to Plaintiffs' Motion to Remand. Plaintiffs responded to the discovery motion on October 19 and, during an informal telephonic status conference with Magistrate Judge Svet on October 29th, agreed to the very limited discovery requested by USG, (*see* Order at 2 (Docket No. 13), filed November 19, 2001). The parties subsequently were unable to agree upon a form of order and a second conference was held by Judge Svet on November 7, 2001, where it became apparent that the scope of discovery sought

by Defendant was greater than that discussed on October 29th. (*Id.*) Judge Svet then directed USG to file the completed discovery motion packet by November 9, 2001, and upon reconsideration reversed his initial decision permitting limited discovery and denied the Motion, finding that there were not disputed material issues of fact regarding remand, that Defendant had not explained why no discovery was taken in state court, prior to removal, regarding whether an ERISA plan exists, and that much of the proposed discovery was duplicative of that already completed in state court. (*Id.* at 2-3.)

Plaintiffs move the Court to remand this action to state court for lack of subject matter jurisdiction on grounds that there is no ERISA subject plan at issue and, thus, no preemption or federal question. They also maintain that if there is any plan, it cannot be subject to ERISA because there are no employee participants as defined under the Act and because Plaintiffs sue USG as a tortfeasor for pre-plan conduct, not as a plan administrator.

The federal removal statutes provide in pertinent part:

> If the case stated by the initial pleading is not removable, a notice of removal may be filed within thirty days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable . . . .

28 U.S.C. § 1446(b). Removal statutes are to be strictly construed, with all doubts resolved against removal. *Fajen v. Found. Reserve Ins. Co.*, 683 F.2d 331, 333 (10th Cir. 1982)(citing *Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 108-09 (1941); *Greenshields v. Warren Petroleum Corp.*, 248 F.2d 61, 65 (10th Cir. 1957)); *see also Laughlin v. Kmart*, 50 F.3d 871, 873 (10th Cir. 1995) ("[T]here is a presumption against removal jurisdiction."). The defendant has the burden of establishing federal jurisdiction when it seeks to remove a case and must prove the grounds necessary

4

to support removal when the plaintiff moves to remand the case. 16 JAMES WM. MOORE, MOORE'S FEDERAL PRACTICE § 107.41[1][e][i].

ERISA provides that "it shall preempt state laws that 'relate to any employment benefit plan,' subject to enumerated exceptions." *Woodworker's Supply Inc. v. Principal Mut. Life Ins. Co.*, 170 F.3d 985, 989 (10th Cir. 1999)(quoting 29 U.S.C. § 1144(a)). The scope of ERISA preemption is expansive, and the Tenth Circuit has identified four causes of action that "relate to" a benefit plan for preemption:

> (1) laws regulating the type of benefits or terms of ERISA plans; (2) laws creating reporting, disclosure, funding or vesting requirements for such plans; (3) laws providing rules for calculating the amount of benefits to be paid under such plans; and (4) laws and common-law rules providing remedies for misconduct growing out of the administration of such plans.

*Id.* at 899, 990 (citing *Airparts Co. v. Custom Benefits Servs. of Austin*, 28 F.3d 1062, 1064-65 (10th Cir. 1994)). ERISA does not, however, preempt all state law claims. *Id.* at 990. It has no bearing, for example, "on those which do not affect the relations among the principal ERISA entities, the employer, the plan, the plan fiduciaries and the beneficiaries as such." *Id.* (quoting *Hospice of Metro Denver, Inc. v. Group Health Ins. of Okla. Inc.*, 944 F.2d 752, 756 (10th Cir. 1991)(internal quotation and alteration omitted)).

Clearly, for there to be ERISA preemption, there must be an employee benefit plan subject to ERISA. *See Airparts*, 28 F.3d at 1064 ("Before preemption will be found, three requirements must be met. 'There must be a state law, an employee benefit plan, and the state law must 'relate to' the employee benefit plan.'" (quoting *Nat'l Elevator Indus., Inc. v. Calhoon*, 957 F.2d 1555, 1557 (10th Cir. 1992)). USG maintains that its removal of this matter to federal court is proper because "Plaintiffs' expert witness, at a deposition on August 10, 2001, clearly and plainly testified under oath

that the annuity purchased by the corporate Plaintiff, Rio Grande Café, Inc. . . . , was used to fund a plan 'subject to ERISA.'"  (Def. USG's Resp. Opp'n Pls.' Mot. Remand at 1.)

In the Tenth Circuit, "deposition testimony, taken under state rules of procedure during the course of litigation in the state court, qualifies as an 'other paper' under § 1446(b)."  *Huffman v. Saul Holdings Ltd. P'ship*, 194 F.3d 1072, 1078 (10th Cir. 1999).  Thus, a deposition may provide notice of grounds forming a proper basis for federal jurisdiction, and thereby support removal to federal court.  *Cf. DeBry v. Transamerica Corp.*, 601 F.2d 480, 488 (10th Cir. 1979)(not taking position that deposition is incapable of furnishing notice; merely saying this deposition was not adequate notice).  Additionally, the thirty-day "removal period commences with the giving of the testimony, not with the receipt of the transcript."  *Id.*  The question before the Court, then, is whether the deposition testimony of Ms. Stanley cited by USG sufficiently establishes the existence of an ERISA plan, thereby justifying federal subject matter jurisdiction based on ERISA preemption.  The Court concludes that it does not.

As discussed by the *DeBry* court, Section 1446(b) uses the word "ascertained" in connection with the giving of notice to a defendant through an "other paper," such as a deposition, that an action is removable.  601 F.2d at 489.  In this context "ascertained" is defined by its common dictionary definition: "to find out or learn with certainty."  *Id.* (quoting Webster's New Collegiate Dictionary (1975)).  Ms. Stanley's testimony exhibits little, if any, "certainty," with regard to the existence of a plan.  It is ambiguous at best and on its face grounded in hypothetical assumptions.  While this testimony might be sufficient to place USG on "inquiry" notice, it does not permit USG or the Court to "learn with certainty."  *Cf. id.* at 488-89 (involuntary and reluctant and evasive deposition

testimony not adequate notice to trigger § 1446(b) 30-day limitations provision for instituting removal).

In its Response to the Motion to Remand, USG attempts to expand the evidentiary record on removal to include a statement in a letter from Plaintiff's counsel to defense counsel and a copy of a Corporate Resolution. (Def. USG's Resp. Opp'n Pls.' Mot. Remand at 3, Exs. B, C.) USG calls the Court's attention to the following portion of the letter, which is dated July 17, 2001: ". . . Mrs. Archuleta has a community interest in the plan in her own right separate and apart from the estate and she also has rights as both the personal representative of the beneficiary of the estate. Further, ERISA rights would apply to these issues." (*Id.* Ex C.) The Corporate Resolution states in whole:

> A SPECIAL MEETING, ON SEPTEMBER 24, 1999, WAS CALLED TO ORDER FOR THE PURPOSE OF DELEGATING AUTHORITY TO DELFINA ARCHULETA, A SHAREHOLDER IN THE ADMINISTRATION OF THE RETIREMENT PLAN OF BERNABE ARCHULETA THROUGH EQUITABLE LIFE, ACCOUNT NUMBER US 530924. A MOTION WAS MADE AND SECONDED AND THE RESOLUTION PASSED. WITH NO OTHER BUSINESS TO BE ACTED UPON, A MOTION WAS MADE TO ADJOURN THE SPECIAL MEETING.

It is signed by Mr. Archuleta as President and Mrs. Archuleta as Secretary/Treasurer.

These additional materials in no way alter the hypothetical nature of the Stanley deposition testimony. Indeed, referencing these documents, which were provided to USG far in advance of the continuation of the deposition, makes USG's reliance on that equivocal, ambiguous testimony even more inexplicable. Additionally, to the extent USG might purport to rely on the letter and/or Corporate Resolution as establishing the existence of a plan subject to ERISA preemption, the Court must note that fact might raise the issue of whether USG timely removed to federal court.

Given this ruling, the Court finds it unnecessary to discuss Plaintiffs' other grounds for remand. The Court, however, will award to Plaintiffs just costs and actual expenses, including attorney fees, incurred as a result of the removal, pursuant to 28 U.S.C. § 1447(c).

**IT IS HEREBY ORDERED** that Plaintiffs' Motion to Remand to State Court (Docket No. 6), filed October 10, 2001, is **GRANTED**.

**IT IS FURTHER ORDERED** that Defendant pay Plaintiffs' just costs and actual expenses, including attorney fees, associated with the removal of this case. Plaintiffs shall submit an itemized accounting to the Court within ten (10) days of entry of this Memorandum Opinion and Order. Defendant shall have ten (10) days within which to contest any costs and additional fees claimed by Plaintiffs.

**IT IS FURTHER ORDERED** that this action is **REMANDED** to the First Judicial District Court, County of Rio Arriba, State of New Mexico.

_____

**UNITED STATES DISTRICT JUDGE**